

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 2, 2021

**BY ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Juan Carlos Balaguera Villamizar*, 21 Cr. 292 (JSR)

Dear Judge Rakoff:

    The Government respectfully submits this letter in connection with the sentencing of Juan Carlos Balaguera Villamizar (the "defendant") in the above-captioned matter, currently scheduled for September 9, 2021 at 2:00 p.m.

## I. Offense Conduct

    The defendant is one of a network of individuals who participated in a scheme to launder what they believed to be criminal proceeds by various methods. One of those individuals, Jose Morely Chocron, was identified to law enforcement by a confidential source ("CS-1") in or around January 2019. Beginning in May 2019, CS-1, another confidential source ("CS-2"), and two undercover agents ("UC-1" and "UC-2") provided Chocron and his associates – Isaac Schachtel, Juan Marcos Matos Ruiz, the defendant, and Alfredo Lichoa – with more than $1.5 million in funds that they represented were the proceeds of bribe payments to Brazilian public officials, and which the defendants agreed to launder.

    Chocron initially negotiated with the CSes and arranged with the CSes and UCs to accept cash payments in the United States himself. After several months, in early October 2019, UC-1 and Chocron arranged for Chocron to launder an additional $250,000. Chocron informed UC-1 that he would be sending an intermediary to pick up the cash, and on October 10, 2019, at the direction of Chocron, UC-1 delivered $250,000 to the defendant. During their meeting, UC-1 described the source of the cash and the defendant expressed an interest in continuing to engage in money laundering transactions with UC-1:

| | |
|---|---|
| **UC-1:** | My people are in Brazil and need to move that money but in a reliable way. |

| | |
|---|---|
| **BALAGUERA-VILLAMIZAR:** | Look, if you need to send to Brazil, I mean, we are talking about [UI], I have that handling if you happen to need money there in Brazil. |
| **UC-1:** | No, because they need to take out that money from Brazil. |
| **BALAGUERA-VILLAMIZAR:** | From Brazil to here? |
| **UC-1:** | Yes. Politicians. |
| **BALAGUERA-VILLAMIZAR:** | Ah, okay. But if you ever happen to need something over there, right? |
| **UC-1:** | [OV] Um-huh. |
| **BALAGUERA-VILLAMIZAR:** | -any transaction, you can tell me and I can handle that for you. |
| **UC-1:** | Do you know Brazil? |
| **BALAGUERA-VILLAMIZAR:** | My associate is in Brazil, he is in Sao Paolo. |

\* \* \*

| | |
|---|---|
| **UC-1:** | Okay, I am giving you here three accounts, all in New York. Uh, either one of those three is-is good. |
| **BALAGUERA-VILLAMIZAR:** | [OV] Okay. |
| **UC-1:** | Okay? Are you going to do it in one transaction or in several ones? |
| **BALAGUERA-VILLAMIZAR:** | One [UI] in Asia, it could be from China. |
| **UC-1:** | From China? |
| **BALAGUERA-VILLAMIZAR:** | From China. |
| **UC-1:** | Okay. Yes. |
| **BALAGUERA-VILLAMIZAR:** | And any information you need I will send you a report of the accounts where I will transfer you from, to send to the bank and so forth. Because it's important that you have that information. |
| **UC-1:** | Yes, yes, yes. |

| | |
|---|---|
| **BALAGUERA-VILLAMIZAR:** | I mean, the transaction number, the service rendered, anything you want, we'll arrange that. |
| | \* \* \* |
| **BALAGUERA-VILLAMIZAR:** | Okay.  Either way I will keep you posted step by step.  I mean, count on that, I mean,  you are talking with the person who will do the processing.  I mean, it's not that I will send someone to do it, no, I take care of everything, I will handle all your stuff, I take care of that. |

The $250,000 funds, minus an 18% commission, was returned to several bank accounts controlled by the FBI, via four different bank accounts, including a bank account in the name of a company operated by the defendant.

Following this initial transaction, the defendant continued to engage in money laundering transactions for UC-1, without involving Chocron.  In late January 2020, the defendant reached out to UC-1 and he and UC-1 subsequently arranged for UC-1 to deliver $150,000 in cash for the defendant to launder in exchange for a 15% commission.  On January 24, 2020, the defendant and UC-1 met in person and UC-1 again explained the source of the funds, telling the defendant "Okay, then what happens is that over there is… they have the South American politics.  These 150 represent a bribe, from a contract…a contract from-from-from government cars . . . from the mayor's office of-of-of that municipality, Cabo Frio.  This is a small bribe."  The defendant accepted the cash, and approximately three weeks later, the funds – minus the commission—were returned to a bank account controlled by the FBI in three wires from a bank account in China.

The defendant and UC-1 arranged a third money laundering transaction in late February 2020.  This time, the defendant arranged for the expected funds (just under $150,000) to be transferred prior to receiving cash from UC-1.  On March 9, 2020, the funds were wired to a bank account controlled by the FBI in three transactions, each from a bank account in Hong Kong.  The defendant was arrested that same day.

## II.    Procedural History

The defendant was charged by complaint on February 27, 2020 and arrested on March 9, 2020 in the Southern District of Florida.  On May 5, 2021, the defendant plead guilty, pursuant to a plea agreement (the "Plea Agreement"), to a one-count information (the "Information"), charging him with conspiracy to commit money laundering, in violation of Title 18, United State Code, Section 1956(h).  In the Plea Agreement, the parties calculated the defendant's Criminal History Category as I, and the applicable Guidelines offense level as 19, resulting in a Guidelines range of 30 to 37 months' imprisonment.

In the PSR, finalized on July 27, 2021, the Probation Office ("Probation") conducted the same Guidelines calculation and also concluded that the applicable Guidelines range was 30 to 37 months' imprisonment. PSR at 20.  Probation recommended a sentence of 366 days' imprisonment followed by two years of supervised release.  *Id*.

### III. Discussion

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In this case, in determining what sentence would comply with the mandate of Section 3553(a), the Government asks the Court to consider in particular the nature and circumstance of the offense and the role the defendant played in the larger scheme, the sentences already imposed on the defendant's coconspirators, ███████████

The defendant, in order to make money, agreed to facilitate the laundering of just under $550,000 in cash that had been represented to him to be the proceeds of bribe payments that had been made to Brazilian public officials. The defendant initially joined the scheme at the direction of Chocron, and may not have previously been aware of the value of the first transaction in which he participated or the terms under which it was conducted. However, he soon solicited additional laundering transactions from UC-1 and was himself the primary actor in these, arranging wire transfers from foreign bank accounts into the FBI's accounts. Over the course of two transactions, the defendant personally accepted $400,000 in cash, and expected to receive more, prepaying approximately $150,000 into the FBI's bank account.

While the funds in question ultimately were not actually criminal proceeds, the defendant was eager to accept them, going so far as to cut Chocron out of future transactions and solicit business from UC-1 directly.

In terms of his involvement in the money laundering scheme, the defendant is positioned between Chocron, who laundered approximately $565,000 over four transactions and was a hub of the conspiracy, and Lichoa, who accepted approximately $50,000 with the intent of laundering it, but ultimately did not complete the transaction.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By: _____
Benet J. Kearney / Andrew C. Adams /
Sarah Mortazavi
Assistant United States Attorneys
(212) 637-2260 / 2340 / 2520

cc: Oscar Rodriguez, Esq. (by email and ECF)
   Probation Officer Angela Cosenza (by email)